UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ABIL TESHOME,<br><br>      Plaintiff,<br><br>  v.<br><br>MAINE STATE PRISON et al.,<br><br>      Defendants. | Docket No. 1:20-cv-00150-JAW |

**COMBINED MOTION TO DISMISS AND FOR SUMMARY JUDGMENT
BY DEFENDANTS MDOC AND MSP**

  Under Federal Rules of Civil Procedure 12(b)(6) and 56, Defendants the Maine Department of Corrections ("MDOC") and Maine State Prison ("MSP") move to dismiss the complaint filed by Abil Teshome. Plaintiff's Section 1983 and Section 1985 claims (Counts I, VI, and VII) are barred by Maine's sovereign immunity. Further, the State and its agencies are not "persons" within the meaning of either statute, and Plaintiff fails to allege the requisite class-based animus necessary to state a Section 1985 claim. Accordingly, the claims should be dismissed under Rule 12(b)(6). Moreover, these federal claims against MDOC and MSP (as well as any employees Plaintiff might seek to sue) are barred for failure to exhaust administrative remedies under the Prison Litigation Reform Act ("PLRA"), meriting summary judgment under Rule 56.

  The state law claims should be dismissed as well. As to Count VIII, MDOC and MSP are not "persons" for purposes of the Maine Civil Rights Act. With respect to Plaintiff's tort claims for civil conspiracy (Count IX), intentional infliction of emotional distress (Count X), and negligent infliction of emotional distress (Count XI), MDOC and MSP are immune from suit in federal court. While the State has waived its immunity from certain tort claims in state court, that

1

waiver does not extend to federal court. Further, Plaintiff has not alleged sufficient facts to state a claim for civil conspiracy or intentional infliction of emotional distress. Accordingly, these claims should be dismissed under Rule 12(b)(6). Finally, the State's partial waiver of immunity from suit in state court does not encompass the tort claims Plaintiff brings here, and MDOC and MSP have not waived immunity by procuring insurance. So, even if the tort claims are not dismissed for the reasons noted above, they should nevertheless be dismissed under either Rule 12(b)(6) or Rule 56 (depending on whether the Court determines that the inclusion of evidence that MDOC and MSP have not procured insurance converts that aspect of this motion into one for summary judgment).

## Facts

### I. Background[1]

Plaintiff has been incarcerated at MSP since May 18, 2017, upon being convicted of manslaughter. Defendants' Statement of Material Facts ("DSMF") ¶ 1; *see also* Maine Prisoner/Probationer Search, https://www1.maine.gov/cgi-bin/online/mdoc/search-and-deposit/detail.pl?mdoc_number1=158104 (last visited September 28, 2020). Plaintiff alleges that Mohamud Mohamed, who is also incarcerated at MSP, was a co-defendant in Plaintiff's criminal case. Compl. ¶¶ 18, 22. Plaintiff further alleges that in 2017, inmate Mohamed struck Plaintiff with his fists and that on May 9, 2018, inmate Mohamed and another inmate attacked Plaintiff in the dining hall at MSP. *Id.* at ¶¶ 25-26, 32-33.

### II. The Grievance Process at Maine State Prison

In 2017 and 2018 and still today, MSP provides an administrative grievance procedure as required by Maine law, specifically 34-A M.R.S.A. § 1402(5). DSMF ¶¶ 3, 5. The grievance

---

[1] The Office of the Attorney General wishes to recognize the substantial contribution to this motion made by Oriana Farnham, a legal intern at the Office of the Attorney General.

procedure allows an inmate to grieve any policy, procedure, practice, condition of confinement, action, decision, or event that directly affects the inmate, that the inmate believes is in violation of his rights, or that the inmate believes is in violation of departmental policies and procedures. DSMF ¶ 3; 3-201 C.M.R. ch. 10, subs. 29.1, § VI(A)(7) (2012). The grievance procedure consists of, first, an attempt at informal dispute resolution, and then three levels of administrative review: (1) first level review by a Grievance Review Officer; (2) second level review by a Chief Administrative Officer; and (3) third level review by the Commissioner or a designee. DSMF ¶ 4. MSP's current administrative grievance procedure has been in effect the entire time Plaintiff has been incarcerated at MSP. *Id.* ¶ 5.

Plaintiff received a copy of the MSP Inmate Handbook upon his arrival at MSP in 2017. *Id.* ¶ 8. Plaintiff signed for receipt of the handbook on May 18, 2017. *Id.* The MSP Handbook in use in 2017 explained how to initiate the grievance process and provided a full copy of the grievance procedure. *Id.* ¶ 9. The MSP Handbook specifically advised inmates about the need to exhaust administrative remedies, stating, "The purpose of this policy is to establish a process for reviewing and resolving grievances brought by prisoners" and that "[p]rior to a prisoner filing most lawsuits, the prisoner must attempt to resolve his complaint by using this process." *Id.* ¶ 10.

Plaintiff has never filed a grievance regarding his interactions with inmate Mohamed, or any other issue with MSP. *Id.* ¶ 11. Nor has Plaintiff written the Warden or the Commissioner regarding his interactions with inmate Mohamed or the allegations underlying the complaint. *Id.* ¶¶ 13-14.

### III.   Insurance

As relevant to arguments regarding the Maine Tort Claims Act, the State has not purchased commercial insurance that would provide coverage for Plaintiff's claims, and the self-insurance

that the State procured through the State's Risk Management Division specifically excludes claims for which the State is immune under the Maine Tort Claims Act. DSMF ¶¶ 15-17.

## Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), the complaint "must contain sufficient factual matter to state a claim for relief that is plausible on its face." *Saldivar v. Racine*, 818 F.3d 14, 18 (1st Cir. 2016) (alterations omitted) (quoting, e.g., *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In *Ocasio-Hernandez v. Fortuňo-Burset*, the First Circuit advised that "a court should employ a two-pronged approach" in resolving a motion to dismiss. 640 F.3d 1, 12 (1st Cir. 2011). First, the Court should identify and disregard statements in the complaint that merely offer "legal conclusions couched as fact" or "threadbare recitals of the elements of a cause of action." *Id.* (quoting *Ashcroft*, 556 U.S. at 679, and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Second, the Court should treat non-conclusory allegations in the complaint as true. *Ocasio-Hernandez*, 640 F.3d at 12. Legal conclusions are not entitled to the presumption of truth granted to factual allegations. *Id.*

Defendants also move for summary judgment under Rule 56 on the issue of Plaintiff's failure to exhaust administrative remedies. Because the exhaustion question involves facts that are not alleged in the complaint, the issue is decided by applying a summary judgment standard. *See Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014) (en banc) (collecting cases), *cert. denied*, 574 U.S. 968 (2014). In *Albino*, the Ninth Circuit explained, "In a typical PLRA case, a defendant will have to present probative evidence . . . that the prisoner has failed to exhaust available administrative remedies under § 1997e(a)," and thus the proper method of adjudication is via Rule 56. *Id.* at 1169. Like questions of subject matter and personal jurisdiction, exhaustion should be

decided "as early as feasible," and, if possible, "before reaching the merits of a prisoner's claim." *Id.* at 1170.

Under Rule 56(a), the Court will grant summary judgment if Defendants show that there is no genuine dispute as to any material fact and that Defendants are entitled to judgment as a matter of law. There is a consensus among the circuits that "judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury." *Small v. Camden Cty.*, 728 F.3d 265, 270-271 (3d Cir. 2013); *Albino,* 747 F.3d at 1170.

**Argument**

**I.    Sovereign Immunity Bars Plaintiff's Federal Claims Against MDOC and MSP.**

   **A. This Court Should Decide Sovereign Immunity Under Rule 12(b)(6).**

Defendants MDOC and MSP move under Rule 12(b)(6) to dismiss the federal claims against them, because these claims are barred by sovereign immunity. *See Fresenius Med. Care Cardiovasc. Res., Inc. v. Puerto Rico & the Caribbean Cardiovasc. Ctr. Corp.*, 322 F.3d 56, 68 & n. 13 (1st Cir. 2003), *cert. denied*, 540 U.S. 878 (2003) (reviewing defendant's Eleventh Amendment[2] defense under Rules 12(b)(6) and ultimately Rule 56). A few federal courts have addressed sovereign immunity as a jurisdictional issue meriting resolution under Rule 12(b)(1) rather than Rule 12(b)(6).[3] *Warnock v. Pecos Cty., Tex.*, 88 F.3d 341, 343 (5th Cir. 1996); *see also Hudson Savings Bank v. Austin*, 479 F.3d 102, 109 (1st Cir. 2007) (noting that the Supreme Court has declined to resolve this ambiguity) (citation omitted). The First Circuit has stated that while the Eleventh Amendment is "jurisdictional" in the sense that it is a limit on the federal court's

---

[2] The Eleventh Amendment and sovereign immunity heavily overlap. The Eleventh Amendment reflects the broader principles of sovereign immunity, which bars suits against the states in federal court. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 55-56 (1996).

[3] If the Court finds the sovereign immunity issue to be jurisdictional, Defendants request that the Court convert this motion to one brought under Rule 12(b)(1).

judicial power and while courts generally adjudicate challenges to jurisdiction first, the Eleventh Amendment is not co-extensive with the limitations on judicial power in Article III. *Brait Builders Corp. v. Mass. Div. of Capital Asset Mgmt.*, 644 F.3d 5, 10-11 (1st Cir. 2011). Thus, the Court may resolve cases on their merits despite Eleventh Amendment issues. *Id.* Even if this Court holds that sovereign immunity bars Plaintiff's claims under Rule 12(b)(1), the Court may still adjudicate the other bases for Defendants' motion (exhaustion and failure to allege facts sufficient to state a claim). "[I]t is well established under First Circuit precedent that federal courts may resolve a case on the merits, *i.e.* on a Rule 12(b)(6) motion, in favor of a state without first resolving any Eleventh Amendment issues the state raises." *Mulero-Carrillo v. Roman-Hernandez*, 790 F.3d 99, 105 (1st Cir. 2015) (citing *Brait Builders*, 644 F.3d at 11). Thus, the Court may proceed to the issues of failure to exhaust and whether Plaintiff alleges facts sufficient to support his claims, even though MDOC and MSP are clearly entitled to sovereign immunity. *Id.*

**B. MDOC And MSP Are Entitled To Sovereign Immunity With Respect To Plaintiff's Section 1983 and Section 1985 Claims.**

The Eleventh Amendment enshrines state sovereign immunity as a constitutional principle and bars suits in federal courts against nonconsenting states. *Alden v. Maine*, 527 U.S. 706, 727-29 (1999); *Rosie D. ex rel. John D. v. Swift*, 310 F.3d 230, 234 (1st Cir. 2002); *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000). A state's sovereign immunity is not merely a defense to monetary liability but instead provides complete immunity from suit. *Fed. Mar. Comm'n v. South Carolina State Ports Auth.*, 535 U.S. 743, 766 (2002). This immunity encompasses "not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities." *Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997) (citations omitted). "States and their agencies are entitled to sovereign immunity regardless of the

relief sought." *Poirier v. Massachusetts Dep't of Corr.*, 558 F.3d 92, 97 (1st Cir. 2009) (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985)).

Courts in this district have consistently recognized that MDOC is a state agency and thus protected by sovereign immunity. *E.g.*, *Walker v. Nichols*, No. 1:13–cv–00259–GZS, 2013 WL 6018614, at *3 (D. Me. Nov. 13, 2013); *Flood v. Me. Dep't of Corr.*, No. 1:11-CV-270-DBH, 2012 WL 5389533, at *9 (D. Me. Aug. 24, 2012), *report and recommendation adopted*, 2012 WL 5389529 (D. Me. Nov. 2, 2012); *see also Poirier*, 558 F.3d at 97 (affirming that the Massachusetts Department of Corrections was entitled to sovereign immunity). Plaintiff appears to acknowledge that MDOC is inseparable from the State and thus immune in naming as a Defendant "State of Maine/Department of Corrections" and alleging that this Defendant is a state agency. Compl. ¶ 7. Because Plaintiff's federal claims against MDOC are barred by sovereign immunity, they must be dismissed.

Plaintiff's federal claims against MSP are also barred by sovereign immunity. The character of a State agency in relation to State sovereign immunity is a question of state law, *Regents of Univ. of Cal.*, 519 U.S. at 429 n. 5, and the Maine Law Court views MSP as inseparable from MDOC, *see Clark v. Me. Dep't of Corr.*, 463 A.2d 762, 765 (Me. 1983) (holding that MSP "is neither an agency nor a legal entity which can sue or be sued[,]" and that the correct entity involved is MDOC). Based on the Law Court's view, courts in this district have repeatedly concluded that MSP shares MDOC's sovereign immunity. *See Humphrey v. Me. State Prison*, No. Civ. 05–63–B–W, 2005 WL 2006838, at *1 (D. Me. Aug. 19, 2005), *report and recommendation adopted*, 2005 WL 2177018 (D. Me. Sept. 7, 2005); *Widi v. U.S. Dep't of Justice*, No. 1:11–cv–00113–JAW, 2011 WL 1663612, at *2 (D. Me. May 3, 2011), *report and recommendation aff'd*, 2011 WL 2970911 (D. Me. July 21, 2011); *Walker v. Nichols*, 2013 WL 6018614, at *3 n. 2;

*Brensinger v. Hunnewell*, No. 1:14-cv-00011-GZS, 2014 WL 2779575, at *2 (D. Me. June 19, 2014).

Nor does any exception to sovereign immunity apply to Plaintiff's case. Sovereign immunity applies to state defendants except in two narrow circumstances. *Davidson v. Howe*, 749 F.3d 21, 28 (1st Cir. 2014) (citations omitted). First, where it has authority to do so, Congress may abrogate a state's sovereign immunity by making that intention unmistakably clear in the language of the statute (*id.*), but it is well settled that Congress did not waive state sovereign immunity through the enactment of 42 U.S.C. § 1983, *Johnson v. Rodriguez*, 943 F.2d 104, 105 (1st Cir. 1991) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). Second, if a state has consented to the jurisdiction of a federal court, sovereign immunity may be waived. *New Hampshire v. Ramsey*, 366 F.3d 1, 15 (1st Cir. 2004). As discussed below, Maine has partially waived its immunity from certain tort claims when brought in state court, but Maine has not waived its immunity from federal law claims, nor has it consented to suit in federal court. Thus, MDOC and MSP are immune from Plaintiff's Section 1983 and Section 1985 claims.

## II. Plaintiff's Section 1983 and Section 1985 Claims Must Be Dismissed Because States Are Not "Persons" for Purposes of Either Statute.

Plaintiff's federal claims against MSP and MDOC must also be dismissed because these entities are not "persons" for the purposes of Section 1983. *Brown v. Newberger*, 291 F.3d 89, 92 (1st Cir. 2002) (citing *Will*, 491 U.S. at 71); *Marcello v. Maine*, 464 F. Supp. 2d 38, 44 (D. Me. 2006) (granting 12(b)(6) motion because the State of Maine is not a "person" for purposes of § 1983); *Wilson v. Town of Fairhaven*, No. 18-11099-PBS, 2019 WL 1757780, at *22 (D. Mass. Mar. 4, 2019) (same for Massachusetts). As with Section 1983, states are not "persons" for the purposes of Section 1985, either. *Santiago v. Keyes*, 839 F. Supp. 2d 421, 428 (D. Mass. 2012). Because Plaintiff cannot state a claim against MDOC or MSP under either Sections 1983 or 1985,

8

Count I (Section 1985 federal conspiracy claim) and Counts VI and VII (Section 1983 claims) must be dismissed.

### III. Plaintiff Fails to State a Claim Under Section 1985.

Even if MDOC and MSP were subject to Section 1985 claims, Plaintiff fails to allege there was any racial or "otherwise class-based, discriminatory animus behind the conspirators' action," as required to state a federal civil rights conspiracy claim under the statute.[4] *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *see also Romero-Barcelo v. Hernandez-Agosto,* 75 F.3d 23, 34 (1st Cir. 1996) ("If no racial animus is charged, a discriminatory class-based animus must be alleged." (citation omitted)); *Donahue v. City of Boston*, 304 F.3d 110, 122 & n.9 (1st Cir. 2002) ("A claim under § 1985(3) requires the plaintiff to show that (1) some class-based animus (usually racial) lay behind the conspirators' action, and (2) that the conspiracy was aimed at interfering with protected rights." (citation omitted)); *accord Knowlton v. Shaw*, 704 F.3d 1, 12 (1st Cir. 2013). Because Plaintiff fails to allege any discriminatory class-based animus, the Section 1985 claim must be dismissed.

### IV. Plaintiff Failed to Exhaust Available Administrative Remedies, Barring His Federal Claims.

Even if Plaintiff's Section 1983 and Section 1985 claims were not subject to dismissal, MDOC and MSP would be entitled to summary judgment because Plaintiff failed to exhaust his administrative remedies. The PLRA requires inmates to exhaust administrative remedies before filing suit in federal court. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *Booth*

---

[4] Plaintiff does not specify which subpart of Section 1985 he is attempting to use. Defendants assume he is pursuing a claim under subpart 3, because the other subparts are clearly inapplicable. *See* 42 U.S.C. § 1985(1) (conspiracies to interfere with federal officers); 42 U.S.C. § 1985(2) (conspiracies to obstruct justice in state and federal courts).

*v. Churner*, 532 U.S. 731, 733-35 (2001); *Acosta v. U.S. Marshals Serv.*, 445 F.3d 509, 512 (1st Cir. 2006). The PLRA is clear that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has cautioned that the PLRA "establish[es] mandatory exhaustion regimes, foreclosing judicial discretion." *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016). Proper and total exhaustion is required. *Woodford*, 548 U.S. at 85, 90. Proper exhaustion means compliance with the procedural rules and deadlines set forth in the agency's grievance process. *Id.* at 90-91. Inmates must exhaust administrative remedies even where the relief sought, such as money damages, cannot be granted by the grievance process. *Booth*, 532 U.S. at 734.

To be awarded summary judgment on the issue of exhaustion, Defendants must show that there was an available administrative remedy that the inmate did not exhaust. *See Jones v. Bock*, 549 U.S. 199, 212 (2007). Here, the evidence shows that MDOC has an administrative grievance procedure. DSMF ¶ 3. This grievance procedure allows an inmate to grieve any action, decision, or event that directly affects the inmate, that the inmate believes is in violation of his rights, or that the inmate believes is in violation of MDOC policies. *Id.* The grievance procedure consists of an informal level and three formal levels of administrative review. *Id.* MDOC's grievance procedure has been in effect the entire time Plaintiff has been incarcerated at MSP. *Id.* ¶¶ 2, 5. Thus, the evidence is clear that there was an administrative grievance procedure in place that Plaintiff could have used.

Despite the existence of this procedure, Plaintiff has never filed a grievance regarding the allegations underlying this action, nor about any other issue while at MSP. *Id.* ¶ 11. While ignorance of the grievance procedure would not excuse exhaustion, the evidence also shows that

Plaintiff received and signed for a copy of the MSP Handbook upon arrival at MSP. *Id.* ¶ 8. That handbook included a copy of the grievance procedure itself and explained how to initiate the grievance process. *Id.* ¶ 9. The MSP Handbook specifically advised inmates about the need to exhaust administrative remedies, stating, "The purpose of this policy is to establish a process for reviewing and resolving grievances brought by prisoners" and that "[p]rior to a prisoner filing most lawsuits, the prisoner must attempt to resolve his complaint by using this process." *Id.* ¶ 10. Although it would not satisfy the PLRA's exhaustion requirement to circumvent the grievance procedure and write to the Warden of MSP or the Commissioner of MDOC instead, Plaintiff has not written these officials regarding the underlying allegations. *Id.* ¶¶ 12-14. Because the evidence shows that Plaintiff had an available administrative remedy but failed to use it, let alone fully exhaust it, Defendants are entitled to summary judgment on the federal claims (Counts I, II, III, V, VI, and VII).[5]

### V.     Plaintiff's Maine Civil Rights Act Claim Must Be Dismissed, Because MDOC and MSP Are Not "Persons" for Purposes of That Act.

Plaintiff's claim against MDOC and MSP under the Maine Civil Rights Act, 5 M.R.S. § 4682 (Count VIII), must be dismissed for the same reason as the Sections 1983 and 1985 claims. The Maine Civil Rights Act, patterned after Section 1983, provides a private cause of action for violations of constitutional rights by "any person." *Jenness v. Nickerson*, 637 A.2d 1152, 1158 (Me. 1994) (citing 5 M.R.S.A. § 4682). Following the Supreme Court's interpretation of "person" in Section 1983, Maine's Law Court has held that the State is not a "person" for the purposes of the Maine Civil Rights Act. *Jenness,* 637 A.2d at 1158*; see also Doe I v. Williams*, 61 A.3d 718,

---

[5] Counts II, III, and V are Section 1983 claims against unnamed "Doe" Defendants employed by MDOC. Although Plaintiff has not identified them, failure to exhaust bars the federal claims against them, too.

739 (Me. 2013) ("A state, including a state official in his or her official capacity, is not a person within the meaning of § 1983 or the [Maine Civil Rights Act.]"); *Morelli v. Webster*, 552 F.3d 12, 17 n. 1 (1st Cir. 2009) (applying same analysis to Section 1983 claims and claims under the Maine Civil Rights Act). Therefore, Count VIII must be dismissed as to MDOC and MSP. *Grendell v. Maine*, No. 1:19-cv-00419-JDL, 2020 WL 3895765, at *8 (D. Me. July 10, 2020) (dismissing Section 1983 and Maine Civil Rights Act claims against the State of Maine and Maine State Police because they are not "persons").

## VI.     MDOC and MSP Are Immune From Tort Claims in Federal Court.

As discussed above, states are immune from suit in federal court unless Congress has either effectively abrogated that immunity or a state has consented to suit. There is no abrogation here, and Maine has not consented to be sued in federal court. "A State's consent to suit must be 'unequivocally expressed' in the text of the relevant statute." *Sossamon v. Texas*, 563 U.S. 277, 284 (2011) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984)). Thus, "[a] State's waiver of sovereign immunity in its own courts is not a waiver of the Eleventh Amendment immunity in the federal courts." *Pennhurst*, 465 U.S. at 99 n.9; *accord Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999). The Maine Tort Claims Act provides that "actions against the State for damages shall *only* be brought in the courts of the State in accordance with this chapter," and, further, that state law shall not be construed to waive the State's Eleventh Amendment protections "except where such waiver is explicitly stated by law." 14 M.R.S.A. § 8118 (emphasis added). Another provision of the Maine Tort Claims Act vests original jurisdiction over all tort claims against governmental entities and employees in the Maine Superior Court. 14 M.R.S.A. § 8106(1). Accordingly, MDOC and MSP are immune from the tort claims set forth in Counts IX, X, and XI.

**VII.     Plaintiff Fails to Allege Facts Sufficient to Support the Conspiracy or Intentional Infliction of Emotional Distress Claims.**

Even if MDOC and MSP were not immune, Count IX (civil conspiracy) and Count X (IIED) are subject to dismissal under Rule 12(b)(6) because Plaintiff's complaint lacks sufficient factual matter to state a claim for relief. *Saldivar*, 818 F.3d at 18.

**A.     Plaintiff Does Not Sufficiently Allege a Conspiracy.**[6]

In order to bring a conspiracy claim, Plaintiff must allege specific facts to demonstrate an agreement to commit an unlawful act. *Abernathy v. Dewey*, 196 F. Supp. 3d 157, 167 (D. Mass. 2016) (citing *Earle v. Benoit*, 850 F.2d 836, 844 (1st Cir. 1988)) (elements of a § 1985 civil rights conspiracy); *Johnson v. Biddeford*, 2:17-cv-00264-JDL, 2020 WL 1877964, at *12 (D. Me. Apr. 15, 2020) (citing *Smith v. Coyne*, No. CV-03-405, 2004 WL 1433638, at *4 (Me. Super. Ct. Apr. 12, 2004)) (elements of a civil conspiracy under Maine law). The First Circuit confirmed this requirement, holding that courts need not accept words like "conspiracy" and "agreement" without sufficient factual allegations as an adequate basis for a conspiracy claim. *DM Research, Inc. v. Coll. of Am. Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999). Plaintiff alleges that "Defendants" (which presumably includes MDOC and MSP but is not clear) "acted in concert and agreed to commit acts against the Plaintiff" to deny his constitutional rights (Compl. ¶ 44) and "acted in concert to commit aforementioned unlawful acts through unlawful means and in bad faith" (Compl. ¶ 101). But nowhere does the Complaint contain any specificity regarding this alleged "conspiracy." For example, Plaintiff does not allege or describe any communication whatsoever

---

[6] The Complaint does not state whether Count IX is alleging civil conspiracy under federal or state law. Defendants presume that Plaintiff brings this claim under state law, because a separate count covers federal conspiracy under Section 1985 (Count I).

between MDOC, MSP, Wellpath, or the unnamed correctional officers, let alone any agreement or conspiracy between them.

Plaintiff's conclusory assertions cannot support a conspiracy claim under either federal or state law. *Boyle v. Barnstable Police Dep't*, 818 F. Supp. 2d 284, 318 (D. Mass. 2011) ("[A] claim of conspiracy must allege facts that suggest a conspiracy rather than set out conclusory allegations that the defendants made an unlawful agreement."); *Johnson v. Biddeford*, 2:17-cv-00264-JDL, 2018 WL 1173428, at *2 (D. Me. Mar. 6, 2018) (dismissing § 1985 conspiracy claim where plaintiff did not allege an agreement of any kind between the defendants). Plaintiff's threadbare allegations do not even meet the pleading standard under Rule 12(b)(6), let alone the heightened pleading standard required to allege conspiracy. *Twombly*, 550 U.S. at 556 ("a bare assertion of conspiracy will not suffice"); *Boyle*, 818 F. Supp. 2d at 318. Because Plaintiff has failed to sufficiently plead conspiracy, Count IX must be dismissed.

### B.  Plaintiff Does Not Sufficiently Allege IIED.

To recover for IIED, Plaintiff must allege that (1) Defendants intentionally or recklessly inflicted severe emotional distress or were certain or substantially certain that such distress would result from Defendants' conduct; (2) that the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community; (3) that the actions of Defendants caused Plaintiff's emotional distress; and (4) the emotional distress suffered by the Plaintiff was so severe that no reasonable person could be expected to endure it. *Lyman v. Huber*, 10 A.3d 707, 711 (Me. 2010). Here, Plaintiff simply recites, word for word, these four elements of the cause of action. Compl. ¶¶ 104-106. These allegations are pure legal conclusions that must be ignored. *Ocasio-Hernandez*, 640 F.3d at 12. While Plaintiff purports to "incorporate" all allegations anywhere in the complaint, even Plaintiff's actual factual allegations (that another inmate attacked him with a weapon in the prison dining hall when

14

Defendants should have allegedly prevented it) do not show any of the requisite elements of IIED. Plaintiff does not allege how Defendants (rather than this other inmate) inflicted severe emotional distress, or that the conduct of Defendants (presumably allowing Plaintiff to work in the dining hall where he was attacked) was "outrageous" or "atrocious" or "exceed[ed] all possible bounds of decency." Nor does Plaintiff make any allegations about the severity of his emotional distress, beyond concluding that he suffers from "severe anxiety, depression, and other [unnamed] psychological maladies." Compl. ¶ 37. Because the complaint fails to state a claim for IIED, Count X should be dismissed.

**VIII. Even if the State's Partial Waiver of Immunity Applies to Claims Brought in Federal Court, Maine Has Not Waived Immunity With Respect to the Claims Here.**

The State has not waived its immunity with respect to the tort claims at issue here (Counts IX, X, and XI). As governmental entities, MSP and MDOC are immune from tort liability under the Maine Tort Claims Act. Maine law governs the pendent state law tort claims, *Penobscot Indian Nation v. Key Bank of Me.*, 112 F.3d 538, 557 n. 27 (1st Cir. 1997), and the Maine Tort Claims Act provides immunity to all governmental entities from suit on all tort claims seeking recovery for damages "except as otherwise expressly provided by statute[,]" *New Orleans Tanker Corp. v. Dep't of Transp.*, 728 A.2d 673, 675 (Me. 1999) (citing 14 M.R.S.A. §§ 8103-8104-A). The few enumerated exceptions to immunity largely relate to injury or death caused by a government entity's negligent ownership or maintenance of government property, *see* 14 M.R.S.A. § 8104-A, and the Law Court has consistently emphasized that each exception must be strictly construed against the backdrop of sovereign immunity, *see Clifford v. MaineGeneral Med. Ctr.*, 91 A.3d 567, 582 (Me. 2014); *New Orleans Tanker Corp.*, 728 A.2d at 675. Here, there is no applicable exception to MDOC or MSP's immunity under the Tort Claims Act. *See, e.g., Thompson v. Dep't*

15

*of Inland Fisheries and Wildlife*, 796 A.2d 674, 675-77 (Me. 2002) (complaint properly dismissed where no exception to state agency's immunity under Maine Tort Claims Act applied).

If the State had obtained insurance coverage in areas in which it is immune from liability, the State would be liable in those areas to the limits of its insurance coverage. 14 M.R.S.A. § 8116; *Burns v. City of Augusta*, 522 A.2d 361, 362 (Me. 1987). However, it cannot be disputed that the State has not purchased commercial insurance that would provide coverage for Plaintiff's claims, and the self-insurance it procured through the State's Risk Management Division specifically excludes claims for which the State is otherwise immune. DSMF ¶¶ 15-17. Here, the State's immunity has been preserved. *Maynard v. Comm'r of Corr.*, 681 A.2d 19, 23-24 (Me. 1996) (State had immunity where the "express terms of the self-insurance coverage" provided by the Risk Management Division excluded coverage for claims from which the State otherwise would be immune); *see also Doucette v. City of Lewiston*, 697 A.2d 1292, 1295 (Me. 1997); *Webb v. Haas*, 665 A.2d 1005, 1011-12 (Me. 1995). Because the State has not waived its immunity, Counts IX, X, and XI against MDOC and MSP must be dismissed, or, in the alternative, MDOC and MSP are entitled to summary judgment on those claims.[7]

---

[7] If the Court adjudicates the state law claims by considering evidence that the State has not obtained insurance to cover those claims, judgment would not be under Rule 12(b)(6) because such evidence is outside of the complaint. Instead, the Court could enter judgment under Rule 56 (*Robinson v. Washington Cty.*, 529 A.2d 1357, 1360–61 (Me. 1987)) or Rule 12(b)(1), based on lack of jurisdiction (*see* 14 M.R.S.A. § 8106 (stating that the Superior Courts "shall have original jurisdiction over all claims permitted under this chapter") and 14 M.R.S.A. § 8102 (defining "permitted under this chapter" as "includ[ing] all claims or actions expressly authorized by [the Tort Claims Act] against a governmental entity and all common law claims or actions against employees for which immunity is not expressly provided by [the Tort Claims Act].")).

**IX.     Because Plaintiff Has No Viable Federal Claims, The Court Should Also Dismiss The State Law Claims.**

Alternatively, because Defendants are entitled to judgment on all of Plaintiff's federal claims, this Court should decline to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3); *Borrás-Borrero v. Corporación del Fondo del Seguro del Estado*, 958 F.3d 26, 36 (1st Cir. 2020). While the Court may adjudicate pendent state law claims, "[a]s a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit . . . will trigger the dismissal without prejudice of any supplemental state-law claims." *Rossi v. Gemma*, 489 F.3d 26, 39 (1st Cir. 2007) (quoting *Rodriguez v. Doral Mortgage Corp.*, 57 F.3d 1168, 1177 (1st Cir. 1995). The Supreme Court has also noted that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988). Specifically, where exhaustion bars the federal claims, dismissal of the state law claims is appropriate, leaving the state court to interpret and apply state law. *Rivera-Diaz v. Humana Ins. of P.R., Inc.*, 748 F.3d 387, 392 (1st Cir. 2014) (affirming the district court's dismissal of state law claims once federal employment discrimination claims were dismissed on exhaustion grounds); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (citing the state court's familiarity with state law). Because there are no surviving federal claims, the Court may dismiss Count VIII (violation of Maine Civil Rights Act), Count IX (civil conspiracy), Count X (IIED), and Count XI (NIED) without prejudice.

## CONCLUSION

For the reasons set forth above, Counts I, VI, VII, VIII, IX, X, and XI against MDOC and MSP should be dismissed. In the alternative, summary judgment should be granted to MDOC and MSP on these claims.

Dated: October 2, 2020

AARON M. FREY
Attorney General

/s/ Jillian R. O'Brien
Jillian R. O'Brien, Bar No. 6225
jill.obrien@maine.gov
Assistant Attorney General
Office of the Attorney General
6 State House Station
Augusta, ME 04333-0006
Tel. (207) 626-8800

Attorneys for Defendants
MDOC & MSP