**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

ABIL TESHOME,

                    Plaintiff,

          v.                                          Docket No. 1:20-cv-00150-JAW

MAINE STATE PRISON et al.,

                    Defendants.

**DEFENDANTS' STATEMENT OF MATERIAL FACTS**

Under Local Rule 56, Defendants Maine Department of Corrections ("MDOC") and

Maine State Prison ("MSP") submit this statement of material facts as to which there is no

dispute:

1.      Plaintiff Abil Teshome was transferred from county jail to MSP on May 18, 2017,

upon his conviction for manslaughter. (Fenn Decl. ¶ 15.)

2.      Plaintiff has not been housed in any other prison since May 18, 2017. (Fenn Decl.

¶ 20.)

3.      MDOC provides an administrative grievance procedure for inmates at MSP that

allows an inmate to grieve any policy, procedure, practice, condition of confinement, action,

decision, or event that directly affects the inmate, that the inmate believes is in violation of their

rights, or that the inmate believes is in violation of Departmental policies and procedures. (Fenn

Decl. Ex. A p. 2.)

4.      MSP's administrative grievance procedure consists of first, an attempt at informal

dispute resolution, and then three levels of administrative review: (1) first level review by a

Grievance Review Officer; (2) second level review by a Chief Administrative Officer; and (3) third level review by the Commissioner or a designee. (Fenn Decl. Ex. A pp. 5-10.)

5.      MSP's current administrative grievance procedure (Policy 29.01) has been in effect during the entire time that Plaintiff has been incarcerated at MSP. (Fenn Decl. ¶ 7; Fenn Decl. Ex. A p. 1.)

6.      Inmates submit grievances to a Grievance Review Officer by using the prison's internal mail system. Inmates may also submit grievances to the administrative office at MSP using the prison's internal mail system. (Fenn Decl. ¶ 10.)

7.      While it would not be proper under MSP's administrative grievance procedure to file a grievance by writing a letter to the Warden of MSP, if an inmate mailed a grievance to the Warden, the Warden would likely pass the grievance on to the Grievance Review Officer for review. (Fenn Decl. ¶¶ 10, 14.)

8.      Plaintiff was provided with and signed a receipt for an inmate handbook ("MSP Handbook") upon his arrival at MSP on May 18, 2017. (Fenn Decl. ¶¶ 16-17; Fenn Decl. Ex. B.)

9.      The MSP Handbook in use in 2017 explained how to initiate the grievance process and contained a full copy of MSP's grievance procedure. (Fenn Decl. ¶¶ 19; Fenn Decl. Ex. C p. 74.)

10.     The MSP Handbook specifically states, "The purpose of this policy is to establish a process for reviewing and resolving grievances brought by prisoners," and that "Prior to a prisoner filing most lawsuits, the prisoner must attempt to resolve his complaint by using this process." (Fenn Decl. Ex C p. 11.)

11.     There is no record that Plaintiff has filed any grievances while incarcerated at MSP. (Fenn Decl. ¶ 13.)

2

12.     While it would not be proper under MSP's administrative grievance procedure to file a grievance other than by submitting a grievance to a Grievance Review Officer, there is no record that Plaintiff has attempted by any other means to file a grievance with MSP or MDOC while incarcerated at MSP.  (Fenn Decl. ¶ 14; Barrows Decl. ¶¶ 6-8.)

13.     There is no record that Plaintiff has written any letter to the Warden of MSP while he has been incarcerated at MSP. (Fenn Decl. ¶ 14.)

14.     There is no record that Plaintiff has written any letter to the Commissioner of MDOC while he has been incarcerated at MSP. (Barrows Decl. ¶ 8.)

15.     The State of Maine's Risk Management Division maintains custody of and administers all insurance policies for the State. As a practice, the Risk Management Division does not purchase commercial liability insurance where the State has immunities under the Maine Tort Claims Act. (Murphy Decl. ¶¶ 4, 6.)

16.     At no time during the period relevant to the allegations in this case, including the period between January 1, 2017, and December 31, 2018, did the State have commercial liability insurance in effect that would provide coverage for Plaintiff's claims against MDOC, nor did the State have commercial liability insurance in effect that would provide coverage for the claims asserted in this case against individual State employees. Rather, the State was self-insured for all such claims. (Murphy Decl. ¶ 10.)

17.     The State of Maine's statements of self-insurance in place during the period relevant to the allegations in this case specifically exclude claims for which MDOC is immune

under the Maine Tort Claims Act. (Murphy Decl. ¶¶ 11-14; Murphy Decl. Ex. A.)

October 2, 2020                                      AARON M. FREY
                                                     Attorney General

                                                     /s/ Jillian R. O'Brien
                                                     Jillian R. O'Brien, Bar No. 6225
                                                     Assistant Attorney General
                                                     Office of Attorney General
                                                     6 State House Station
                                                     Augusta, ME 04333-0006
                                                     Tel. (207) 626-8800
                                                     *Jill.OBrien@maine.gov*

                                                     Attorneys for Defendants
                                                     MDOC & MSP