UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| ABIL TESHOME, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 1:20-cv-00150-JAW |
| | ) | |
| MAINE STATE PRISON, et al., | ) | |
| | ) | |
| Defendants | ) | |

## RECOMMENDED DECISION ON DEFENDANTS'
## MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT

Plaintiff alleges that Defendants Correct Care Solutions[1] ("Correct Care") and John Doe 3 provided inadequate medical care after he was attacked by two other inmates at the Maine State Prison. (Complaint, ECF No. 1.) Plaintiff asserts claims against Defendants pursuant to 42 USC § 1983, 42 USC § 1985, and the Maine Civil Rights Act (5 M.R.S. § 4682), alleging violations of the Fourth, Fifth, Eighth, and Fourteenth Amendments.[2] Plaintiff also asserts a claim of civil conspiracy.

The matter is before the Court on Defendants' motion for summary judgment based on Plaintiff's failure to exhaust the available administrative remedies, and Defendants' motion to dismiss for failure to state an actionable claim. (Motion, ECF No. 20.)

---

[1] Defendant Correct Care Solutions is now known as Wellpath, LLC.

[2] Plaintiff originally filed an eleven-count complaint against Correct Care, John Doe 3, and, among others, the Maine State Prison and the Maine Department of Corrections. (Complaint, ECF No. 1.) Plaintiff has since voluntarily dismissed the claims against the two State of Maine defendants. (Notice of Dismissal, ECF No 18.)

Following a review of the record and after consideration of the parties' arguments, I recommend the Court grant Defendants' motion for summary judgment. In the event the Court does not grant summary judgment or to the extent summary judgment does not resolve all Plaintiff's asserted claims, I recommend the Court grant Defendants' motion to dismiss.

## I. MOTION FOR SUMMARY JUDGMENT

Defendants moved for summary judgment based on Plaintiff's failure to satisfy the exhaustion requirement of the Prison Litigation Reform Act (PLRA). *See* 42 U.S.C. § 1997e. (Motion at 17-20.)

## A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "After the moving party has presented evidence in support of its motion for summary judgment, 'the burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor.'" *Woodward v. Emulex Corp.*, 714 F.3d 632, 637 (1st Cir. 2013) (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 158 (1st Cir. 1998)).

A court reviews the factual record in the light most favorable to the non-moving party, resolving evidentiary conflicts and drawing reasonable inferences in the non-movant's favor. *Perry v. Roy*, 782 F.3d 73, 77 (1st Cir. 2015). If a court's review of the record reveals evidence sufficient to support findings in favor of the non-moving party on one or more of the plaintiff's claims, a trial-worthy controversy exists, and summary

judgment must be denied as to any supported claim.  *Id.* ("The district court's role is limited to assessing whether there exists evidence such that a reasonable jury could return a verdict for the nonmoving party." (internal quotation marks omitted)).  Unsupported claims are properly dismissed.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

## B.    Summary Judgment Record

When presented with a summary judgment motion, a court ordinarily considers only the facts included in the parties' statements of material facts, which statements must be supported by citations to evidence of record.  Federal Rule of Civil Procedure 56(c) and District of Maine Local Rule 56(b)-(d) require the specific citation to record evidence.

By rule, a party seeking summary judgment must file, in addition to its summary judgment motion, a supporting statement of material facts setting forth each fact in a separately numbered paragraph, with each factual statement followed by a citation to evidence of record that supports the factual statement.  D. Me. Loc. R. 56(b).  A party opposing a motion for summary judgment must file an opposing statement in which it admits, denies, or qualifies the moving party's statements by reference to each numbered paragraph, with citations to supporting evidence, and in which it may set forth additional facts, in separately numbered paragraphs, with citation to supporting evidence.  D. Me. Loc. R. 56(c).  "Facts contained in a supporting ... statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted."  D. Me. Loc. R. 56(f).

Although Plaintiff filed a memorandum in opposition to Defendants' motion for summary judgment (Response, ECF No. 24), Plaintiff did not file a response to

Defendants' supporting factual statement or a statement of additional material facts.[3]  *See*

D. Me. Loc. R. 56(c).  The Court thus deems as admitted the facts contained in Defendants'

supporting statement of material facts.  *See* D. Me. Loc. R. 56(f).

**C.     Factual Background**

Plaintiff has been incarcerated at the Maine State Prison since May 18, 2017.

(Defendants' Statement of Material Facts (DSMF) ¶ 1, ECF No. 21.)  Upon arrival at the

prison, Plaintiff was provided with, and signed for, a copy of the Prisoner Handbook.  (*Id.*

¶ 2; *see* ECF No. 14-3.)  The Handbook explained how to initiate the grievance process

and contained a copy of the prison's Prisoner Grievance Process, Medical and Mental

Health Care Policy (Policy 29.02).  (*Id.* ¶ 3.)  The Handbook states that "[t]he purpose of

this policy is to establish a process for reviewing and resolving grievances brought by

prisoners. Prior to a prisoner filing most lawsuits, the prisoner must attempt to resolve his

complaint by using this process."  (*Id.* ¶ 4.)

Under this process, a "Grievance Review Officer" is assigned to investigate and

respond to inmate health care grievances.  (*Id.* ¶ 5.)  Inmates may submit grievances to the

Grievance Review Officer or to the administrative office at the prison by using the internal

mail system, and the prison maintains records of all inmate grievances.  (*Id.* ¶¶ 10-11.)  In

addition to the informal resolution of a grievance, there are three levels of review available

in the grievance process: the filing of a grievance with the Grievance Review Officer, an

---

[3]  Plaintiff has, instead, relied on the facts as presented in his objection to Defendants' motions and "the
assertion of facts stated in his complaint."  (Response at 2.)

appeal to the Chief Administrative Officer, and, finally, a subsequent appeal to the Commissioner of the Maine Department of Corrections. (*Id.* ¶¶ 6-9.)

There is no record of Plaintiff submitting a grievance while incarcerated or a grievance that was dismissed. (*Id.* ¶ 12.)

## D.  Discussion

Defendants argue that Plaintiff's claims are precluded, pursuant to the PLRA, from asserting his claim because Plaintiff failed to exhaust available administrative remedies prior to filing his complaint. *See* 42 U.S.C. § 1997e(a). (Motion at 17-20.)  Plaintiff contends that his claims are not barred by the PLRA, arguing that a grievance would have been futile "[b]ecause [he] could not realistically have been provided any form of relief through the grievance process." (Response at 6.)

The PLRA provides that

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). "'Prison conditions' under [§ 1997e(a)] include individual instances of medical mis- or non-treatment." *Acosta v. United States Marshals Serv.*, 445 F.3d 509, 512 (1st Cir. 2006).

Section 1997e(a) requires "proper exhaustion" of a prisoner's administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "Proper exhaustion demands

compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. "Compliance with prison grievance procedures ... is all that is required ... to 'properly exhaust.'" *Jones*, 549 U.S. at 218. Exhaustion is required even when the prisoner's suit seeks monetary damages that are not available through the prison's grievance process. *Booth v. Churner*, 532 U.S. 731, 734-35 (2001). However, "[a] prisoner need not exhaust remedies if they are not 'available.'" *Ross v. Blake*, 136 S. Ct. 1850, 1855 (2016). "[A]n inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 1859 (quoting *Booth*, 532 U.S. at 738).

As to Plaintiff's futility argument, "there is no 'futility exception' to the PLRA exhaustion requirement." *Medina-Claudio v. Rodriguez-Mateo*, 292 F.3d 31, 35 (1st Cir. 2002) (quoting *Massey v. Wheeler*, 221 F.3d 1030, 1034 (7th Cir. 2000)). The Supreme Court, however, has recognized "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Ross*, 136 S. Ct. at 1859. "First, ... an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* (citing *Booth*, 532 U.S. at 736, 738). Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Third, an otherwise available grievance process is not available "when prison administrators thwart inmates

6

from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

The summary judgment record establishes that Plaintiff was provided with a copy of the Prisoner Handbook, which included a copy of the "Medical and Mental Health Care Policy" for prisoner's medical-related grievances.  (DSMF ¶¶ 2-3.)  The Handbook also explained how to initiate the grievance process and described the three levels of review that are available in that process.  (*Id.* ¶¶ 3, 6-9.)  Plaintiff did not submit a grievance following the May 9, 2018, incident in which Plaintiff was injured.[4]  (*Id.* ¶ 12.)  Plaintiff, therefore, did not file a grievance regarding the medical care administered by Defendants after the incident.

Plaintiff has failed to provide or otherwise identify any record evidence that would support a finding that the grievance process was unavailable to him.  The uncontroverted evidence establishes that a grievance process was available to and known by Plaintiff and that Plaintiff did not file a grievance regarding the conduct about which he complains.  Because Plaintiff has failed to exhaust the available administrative remedies, summary judgment in favor of Defendants is warranted as to Plaintiff's claims asserted "under section 1983 . . . or any other Federal law."  42 U.S.C. § 1997e(a).

## II.   MOTION TO DISMISS

Defendants also maintain Plaintiff has failed to allege facts to support a plausible claim.  In the event the Court concludes that summary judgment is not warranted and to

---

[4]  As discussed in more detail below, *see infra* II.A, Plaintiff was attacked by other inmates on May 9, 2018, and subsequently treated by Correct Care employees.

the extent that the exhaustion requirement does not apply to Plaintiff's claims arising under state law, dismissal is appropriate as Plaintiff has not alleged an actionable claim.

## A.   Factual Background

The facts set forth below are drawn from Plaintiff's complaint.  Plaintiff's factual allegations are deemed true when evaluating a motion to dismiss. *McKee v. Cosby*, 874 F.3d 54, 59 (1st Cir. 2017).

Plaintiff is an inmate at the Maine State Prison.  (Complaint ¶ 6.)  Correct Care is a company that provides healthcare services to inmates at the prison and employs John Doe 3.  (*Id.* ¶¶ 9, 12.)  Plaintiff was one of three co-defendants charged with murder following the death of a man in 2015.  (*Id.* ¶ 16.)  Plaintiff later agreed to plead guilty to manslaughter and to testify in the State's case against one of the co-defendants, Mohamud Mohamed. (*Id.* ¶ 20.)  In May 2017, Plaintiff was convicted of manslaughter and sentenced to a term of twelve and a half years' imprisonment.  (*Id.* ¶ 14.)  Mohamed pleaded guilty to murder and was sentenced to thirty years' imprisonment.  (*Id.* ¶ 21.)

Both Plaintiff and Mohamed were incarcerated at the Maine State Prison.  (*Id.* ¶¶ 22-23.)  After arriving at the prison in May 2017, Plaintiff requested to have no contact with Mohamed for fear of retaliation.  (*Id.* ¶ 24.)  A week later, Plaintiff was attacked and punched by Mohamed.  (*Id.* ¶¶ 25-26.)  For several months thereafter, Plaintiff did not see Mohamed, but continued to try to avoid any contact with him.  (*Id.* ¶ 28.)

In May 2018, Plaintiff began working in the prison kitchen.  (*Id.* ¶ 29.)  Plaintiff asked to stand near a guard while performing his work, but his request was denied.  (*Id.* ¶ 31.)  On May 9, 2018, while Plaintiff was working in the kitchen, Mohamed and a second

inmate approached Plaintiff and attacked him with "shanks." (*Id.* ¶¶ 32-33.) Plaintiff suffered four puncture wounds in his back, as well as wounds to his neck, cheek, nose, mouth, and forearm. (*Id.* ¶ 35.) Following the attack, Plaintiff was treated by Correct Care employees. (*Id.* ¶ 38.) Plaintiff was not transported to a hospital. (*Id.*) Plaintiff's "wounds were only covered by superficial bandages" by Correct Care employees and, as a result, he has "suffered enormous amounts of pain and . . . severe emotional distress." (*Id.* ¶¶ 39-40.) Many of Plaintiff's wounds resulted in "distinct permanent scars." (*Id.* ¶ 35.)

## B.   Motion to Dismiss Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." In reviewing a motion to dismiss under Rule 12(b)(6), a court "must evaluate whether the complaint adequately pleads facts that 'state a claim to relief that is plausible on its face.'" *Guilfoile v. Shields*, 913 F.3d 178, 186 (1st Cir. 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In doing so, a court "assume[s] the truth of all well-pleaded facts and give[s] the plaintiff the benefit of all reasonable inferences therefrom." *Id.* (quoting *Thomas v. Rhode Island*, 542 F.3d 944, 948 (1st Cir. 2008)). The complaint, however, may not consist entirely of "conclusory allegations that merely parrot the relevant legal standard." *Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 231 (1st Cir. 2013). Federal Rule of Civil Procedure 12(b)(6) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To evaluate the sufficiency of the complaint, therefore, a court must "first, 'isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash

cause-of-action elements,' then 'take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief.'" *Zell v. Ricci*, 957 F.3d 1, 7 (1st Cir. 2020) (alteration omitted) (quoting *Zenon v. Guzman*, 924 F.3d 611, 615-16 (1st Cir. 2019)).

## C.   Discussion

Plaintiff asserts multiple claims against Defendants, including (1) a claim under 42 U.S.C. § 1985(3)[5] alleging that Defendants acted in concert to deny him the protections of the United States Constitution; (2) a claim for civil conspiracy; (3) claims under 42 U.S.C. § 1983 alleging that Defendants violated his constitutional rights; and (4) a claim under the Maine Civil Rights Act, 5 M.R.S. § 4682.[6]

### 1.   Plaintiff's Civil Rights Conspiracy Claim: 42 U.S.C. § 1985(3)

Defendants argue that Plaintiff has failed to state a claim because he has not alleged facts showing that "the conduct of the Defendants resulted from an invidiously discriminatory class-based animus towards the class of persons of which [Plaintiff] is a member." (Motion at 7.)  Defendants also contend that Plaintiff has failed to allege facts showing "the existence of a conspiracy and how the Defendants acted in furtherance of that conspiracy." (*Id.*) Plaintiff counters, arguing that he had alleged conspiracy in his

---

[5]  Although Plaintiff does not specify in his complaint which of § 1985's three subsections is implicated in this matter, Plaintiff states in his response to Defendants' motion to dismiss that the allegations in his complaint "comprise the required elements to state a claim under 42 U.S.C. §1985(3)." (Response at 3.)

[6]  Plaintiff conceded that Count X and XI of his complaint, which asserted claims of both negligent and intentional infliction of emotional distress against all defendants, are "premature" and has thus "withdraw[n]" those claims. (Response at 6.)  Accordingly, dismissal of the the claims asserted in Count X and XI is appropriate.  *See Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55-56 (1st Cir. 2012) (permitting a court to consider "concessions in plaintiff's response to the motion to dismiss" when ruling on a motion to dismiss (internal quotation marks omitted)).

complaint as to all defendants and that the "lack of care" by Correct Care and John Doe 3 following Plaintiff's injuries constitutes "an overt act in furtherance of the conspiracy." (Response at 3.)

"Section 1985 permits suits against those who conspire to deprive others 'of the equal protection of the laws, or of the equal privileges and immunities under the law . . . .'" *Soto-Padró v. Pub. Bldgs. Auth.*, 675 F.3d 1, 4 (1st Cir. 2012) (quoting 42 U.S.C. § 1985(3)). A claim under section 1985(3) must contain the following elements:

> First, the plaintiff must allege a conspiracy; second, he must allege a conspiratorial purpose to deprive the plaintiff of the equal protection of the laws; third, he must identify an overt act in furtherance of the conspiracy; and finally, he must show either injury to person or property, or a deprivation of a constitutionally protected right..

*Perez-Sanchez v. Pub. Bldg. Auth.*, 531 F.3d 104, 107 (1st Cir. 2008) (quoting *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996)). To demonstrate a conspiracy under section 1985(3), a plaintiff "must plausibly allege facts indicating an agreement among the conspirators to deprive the plaintiff of [his] civil rights," either by alleging "direct evidence of such an agreement" or by "plead[ing] plausible factual allegations sufficient to support a reasonable inference that such an agreement was made." *Parker v. Landry,* 935 F.3d 9, 18 (1st Cir. 2019) (citing *Earle v. Benoit*, 850 F.2d 836, 843 (1st Cir. 1988)). Moreover, the "conspiratorial purpose" behind such an agreement "must involve 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Id.* (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)); *see Grendell v. Maine*, No. 1:19-cv-00419-JDL, 2020 U.S. Dist. LEXIS 121691, at *12 (D. Me. Jul. 10, 2020).

Plaintiff alleges that his request "to stand near a guard" was denied prior to the May 9, 2018, incident.  (Complaint ¶ 31.)  Plaintiff also alleges that Correct Care employees treated his wounds following the incident, and that Defendants had "only covered" the wounds with "superficial bandages."  (*Id.* ¶ 39.) Plaintiff has not alleged any facts to suggest there was an "agreement among the conspirators"—that is, an agreement among the prison guards and the Correct Care employees— to deny Plaintiff's request, nor do the allegations "support a reasonable inference that such an agreement was made." *Parker,* 935 F.3d at 18.  Further, Plaintiff has not asserted facts that would establish a "racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Id.* (quoting *Griffin*, 403 U.S. at 102).  Accordingly, Plaintiff has failed to state a plausible claim for relief under § 1985(3).

### 2.     **Plaintiff's Civil Conspiracy Claim**

Plaintiff also asserts claims of civil conspiracy. Although Plaintiff has not specifically alleged in his complaint whether he asserts the claim under federal law or state law, Defendants argue that Plaintiff fails to state a claim regardless of the applicable law.[7]

Defendants contend that Plaintiff has failed to assert a conspiracy claim under 42 U.S.C. § 1983, because Plaintiff has not alleged facts of "an agreement between any of the Defendants to inflict an injury or wrong" upon him, and that Plaintiff has not alleged facts demonstrating a deprivation of a right secured by the Constitution.  (Motion at 13-14.) Defendants also argue that Plaintiff has failed to state a claim for civil conspiracy under

---

[7]  In his response to Defendants' motion to dismiss, Plaintiff asserts that the allegations in his complaint support a conspiracy claim "under Federal and Maine law."  (Response at 6.)

Maine law.  (*Id.* at 14.)  Plaintiff maintains that he has stated a claim for civil conspiracy because prison staff "failed to protect" him prior to the incident on May 9, and Defendants then treated Plaintiff's injuries "as minor despite the clear evidence to the contrary." (Response at 5-6.)

"Conspiracy claims are actionable under [42 U.S.C. §] 1983." *Vincent v. Town of Scarborough*, No. 02-239-P-H, 2003 U.S. Dist. LEXIS 20910, at *120 (D. Me. Nov. 20, 2003). "A civil rights conspiracy under section 1983 is 'commonly defined as a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages.'" *Sanchez v. Foley*, 972 F.3d 1, 11 (1st Cir. 2020) (alteration omitted) (quoting *Estate of Bennett v. Wainwright*, 548 F.3d 155, 178 (1st Cir. 2008)). "Pleading conspiracy under section[] 1983 . . . requires at least minimum factual support of the existence of a conspiracy." *Francis-Sobel v. Univ. of Maine*, 597 F.2d 15, 17 (1st Cir. 1979); *see Earle*, 850 F.2d at 843 ("[T]he agreement that rests at the heart of a conspiracy is seldom susceptible of direct proof: more often than not such an agreement must be inferred from all the circumstances."). "A party cannot base a conspiracy claim on conclusory allegations alone." *Jones v. Town of Milo*, No. 09- CV-80-B-W, 2009 U.S. Dist. LEXIS 49311, at *42 (D. Me. Jun. 5, 2009) (citing *Estate of Bennett*, 548 F.3d at 178). Therefore, "[t]o establish a civil rights conspiracy, a plaintiff must show 'not only a conspiratorial agreement but also an actual abridgment of some federally-secured right.'" *Sanchez*, 972 F.3d at 11 (quoting *Nieves v. McSweeney*, 241 F.3d 46, 53 (1st Cir. 2001)).

In addition, to demonstrate an agreement among conspirators, a plaintiff must allege facts showing "either the existence of a single plan, the essential nature and general scope of which was known to each person who is to be held responsible for its consequences, or at the least that the parties decided to act interdependently, each actor deciding to act only because he was aware that the others would act similarly." *Id.* at 12 (alterations and quotation marks omitted).

As to Plaintiff's state law claim, "civil conspiracy in Maine is not a separate tort but rather a rule of vicarious liability." *Spyderco, Inc. v. Kevin, Inc.*, No. 2:17-CV-309-DBH, 2017 U.S. Dist. LEXIS 204745, at *6 (D. Me. Dec. 12, 2017) (quotation marks omitted). "Elements of [a civil conspiracy] claim include a meeting of the minds and the actual commission of an underlying wrong—specifically, in the case of Maine law, a tort." *Vincent*, 2003 U.S. Dist. LEXIS 20910, at *121; *see Johnson v. City of Biddeford*, 454 F. Supp. 3d 75, 93 (D. Me. 2020). However, "because civil conspiracy is not 'an independent tort in Maine,' liability ordinarily may not be imposed on this basis alone." *Johnson*, 454 F. Supp. at 93 (quoting *Fiacco v. Sigma Alpha Epsilon Fraternity*, 484 F. Supp. 2d 158, 176 (D. Me. 2007)). "[A]bsent the actual commission of some independently recognized tort, a claim for civil liability for conspiracy fails." *Potter, Prescott, Jamieson & Nelson, P.A. v. Campbell*, 1998 ME 70, ¶ 8, 708 A.2d 283.

As with his claim under § 1985(3), Plaintiff has failed to allege the existence of a conspiracy under either federal or state law. Plaintiff alleges that he began working in the prison kitchen in May 2018 and that, at that time, his request to perform his work while standing near a prison guard was denied. (Complaint ¶¶ 29, 31.) Plaintiff also alleges that

14

Defendants treated Plaintiff's wounds following the May 9 incident, covering the wounds with "only . . . superficial bandages." (*Id.* ¶ 39.) Although Plaintiff contends that the "nature of the relationship between" all named defendants—including that "[Defendants] performed work on behalf of" the prison—is sufficient to show a conspiracy (Response at 5), Plaintiff has not alleged any facts that demonstrate, or give rise to an inference of, a "conspiratorial agreement," *Sanchez*, 972 F.3d at 11 (quoting *Nieves*, 241 F.3d at 53), or "a meeting of the minds," *Vincent*, 2003 U.S. Dist. LEXIS 20910, at *121, among the alleged conspirators. Moreover, as to the state law claim, Plaintiff has since conceded that the torts on which liability could rest for a claim of civil conspiracy—claims for both negligent and intentional infliction of emotional distress—were "premature" and "withdraw[n]." (Response at 6.) Plaintiff, therefore, has not alleged the "commission of some independently recognized tort" that would form the basis of liability for a claim of civil conspiracy under Maine law. *Potter*, 1998 ME 70, ¶ 8, 708 A.2d 283; *see Johnson*, 454 F. Supp. at 93.

### 3.    Plaintiff's Civil Rights Claims: 42 U.S.C. § 1983 and 5 M.R.S. § 4682

Plaintiff asserts claims against Correct Care and John Doe 3 pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights during Defendants' medical treatment of his injuries following the May 9, 2018, incident. (Complaint ¶¶ 70-85.)

### a.    John Doe 3

Plaintiff asserts a claim of deliberate indifference based on inadequate or delayed medical care by John Doe 3, alleging violations of Plaintiff's rights under the Eighth and Fourteenth Amendments. (*Id.* ¶¶ 79-82.) In their motion to dismiss, Defendants argue that

Plaintiff has not alleged facts demonstrating that his "treatment was improper or that he sustained any serious risk to his health as the result of this treatment." (Motion at 10.)

"Section 1983 provides a cause of action when an individual, acting under color of state law, deprives a person of constitutional rights." *Saldivar v. Racine*, 818 F.3d 14, 18 (1st Cir. 2016); see 42 U.S.C. §1983. To prevail on such a claim, "a plaintiff must show that 'the challenged conduct [is] attributable to a person acting under color of state law' and that 'the conduct must have worked a denial of rights secured by the Constitution or by federal law.'" *Freeman v. Town of Hudson*, 714 F.3d 29, 37 (1st Cir. 2013) (quoting *Soto v. Flores*, 103 F.3d 1056, 1061 (1st Cir. 1997)).

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. From this prohibition, "courts have derived the principles that govern the permissible conditions under which prisoners are held and that establish the medical treatment those prisoners must be afforded." *Kosilek v. Spencer*, 774 F.3d 63, 82 (1st Cir. 2014) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). "The Eighth Amendment, applied to the states through the Fourteenth Amendment, protects incarcerated people from state corrections officials' 'deliberate indifference to serious medical needs.'" *Zingg v. Groblewski*, 907 F.3d 630, 634-35 (1st Cir. 2018) (quoting *Feeney v. Corr. Med. Servs.*, Inc., 464 F.3d 158, 161-62 (1st Cir. 2006); *see Perry v. Roy*, 782 F.3d 73, 78 (1st Cir. 2015). To allege "a claim of deliberate indifference based on inadequate or delayed medical care, 'a plaintiff must satisfy both a subjective and objective inquiry.'" *Perry*, 782 F.3d at 78 (quoting *Leavitt v. Corr. Med. Servs.*, 645 F.3d 484, 497 (1st Cir. 2011)).

First, to demonstrate a claim under the objective prong, a plaintiff "must show that []he has a serious medical need for which []he has received inadequate treatment." *Kosilek*, 774 F.3d at 85. For a medical condition to be objectively "serious," there must be "a sufficiently substantial 'risk of serious damage to [the inmate's] future health.'" *Farmer*, 511 U.S. at 843 (quoting *Helling v. McKinney*, 509 U.S. 25, 35 (1993)). This "requires that the need be 'one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Kosilek*, 774 F.3d at 82 (quoting *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990)). However, this "does not impose upon prison administrators a duty to provide care that is ideal, or of the prisoner's choosing." *Id.* (citations omitted). "Rather, the Constitution proscribes care that is 'so inadequate as to shock the conscience.'" *Id.* at 83 (quoting *Torraco v. Maloney*, 923 F.2d 231, 235 (1st Cir. 1991)).

Second, under the subjective prong, "a plaintiff must show 'that prison officials possessed a sufficiently culpable state of mind, namely one of deliberate indifference to an inmate's health or safety.'" *Perry*, 782 F.3d at 78 (quoting *Leavitt*, 645 F.3d at 497). Thus, "even if medical care is so inadequate as to satisfy the objective prong, the Eighth Amendment is not violated unless prison administrators also exhibit deliberate indifference to the prisoner's needs." *Kosilek*, 774 F.3d at 83. "For purposes of this subjective prong, deliberate indifference 'defines a narrow band of conduct,' and requires evidence that the failure in treatment was purposeful." *Id.* (citation omitted) (quoting *Feeney*, 464 F.3d at 162); *see Perry*, 782 F.3d at 79 (stating that deliberate indifference "requires evidence that

the absence or inadequacy of treatment is intentional").  A constitutional claim may arise when "the treatment provided [was] so inadequate as 'to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind.'"  *Leavitt*, 645 F.3d at 497 (quoting *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)); *see Feeney*, 464 F.3d at 162 ("[W]hen a plaintiff's allegations simply reflect a disagreement on the appropriate course of treatment, such a dispute with an exercise of professional judgment may present a colorable claim of negligence, but it falls short of alleging a constitutional violation." (alterations and quotation marks omitted)).

Plaintiff alleges that he suffered four puncture wounds in his back, as well as wounds to his neck, face, and forearm, following the attack by two other inmates. (Complaint ¶ 35.)  He was subsequently treated by Correct Care employees, who covered Plaintiff's wounds with "superficial bandages." (*Id.* ¶¶ 38-39.)  Plaintiff was not transported to a hospital.  (*Id.*)  Plaintiff alleges that as the result of Defendants' actions, he "suffered enormous amounts of pain and suffered severe emotional distress." (*Id.* ¶ 40.)

While Plaintiff evidently maintains that he should have been transported to a hospital, he has not alleged how the care provided by John Doe 3 constituted "inadequate treatment," *Kosilek*, 774 F.3d at 85, that any "failure in treatment was purposeful," *id.* at 83, or that the care caused an "unnecessary and wanton infliction of pain or [was] repugnant to the conscience of mankind," *Leavitt*, 645 F.3d at 497 (quotation marks omitted). Plaintiff alleges that he was not transported to the hospital, but instead was treated "by staff employed by Defendant Correct Care Solutions," and that his "wounds were only covered by superficial bandages by employees of Correct Care Solutions."  (Complaint ¶¶ 37, 38.)

Plaintiff subsequently alleges that John Doe 3 acted with "deliberate indifference to Plaintiff's serious medical needs." (Complaint ¶ 81.)  Plaintiff, however, does not describe when John Doe 3 became involved in Plaintiff's treatment, the treatment John Doe 3 provided, or any facts to support Plaintiff's conclusory assertion that John Doe 3 acted with deliberate indifference.  Conclusory allegations that simply assert a legal standard cannot support a claim.  *Young*, 717 F.3d at 231.  Even if Plaintiff had identified John Doe 3 as having cared for him by employing superficial bandages, Plaintiff's allegations would be insufficient insofar as Plaintiff has failed to allege facts that would support a finding that treatment at a hospital was necessary, that treatment in a hospital would have been different, or that treatment in a hospital would have produced a different result.

In sum, Plaintiff has not alleged facts that would support a deliberate indifference finding.  Accordingly, Plaintiff has failed to state a § 1983 claim against John Doe 3.

### b.  Correct Care

Plaintiff alleges that Correct Care's "failure to hire, train and supervise employees" as well as its "policies, customs, and practices" are the cause of his constitutional violations.  (Complaint ¶ 71.)  Defendants argue that Plaintiff has not alleged any facts demonstrating either that a Correct Care policy "impacted his treatment" or "that any of [Correct Care's] health care providers acted in violation of his constitutional rights as the direct result of its policies or customs."  (Motion at 13.)  Plaintiff contends that his claim is supported because "the allegations so clearly raise the issue of inadequate care given the injuries described."  (Response at 5.)

A private contractor such as Correct Care, which provides medical services at a state prison, is generally treated as a municipality for purposes of section 1983 claims.[8]  *See Wall v. Dion*, 257 F. Supp. 2d 316, 319-20 (D. Me. 2003); *see also Witham v. Corizon, Inc.*, No. 2:12-cv-00146-NT2012 U.S. Dist. LEXIS 152869, at \**20-21 & n. 4 (D. Me. Sep. 17, 2012).  "[A]lthough a municipality may not be held liable under a theory of respondeat superior for an employee's constitutional violation, it may be held liable when 'execution of [the municipality's] policy or custom . . . inflicts the injury' and is the 'moving force' behind the employee's constitutional violation." *Saldivar v. Racine*, 818 F.3d 14, 20 (1st Cir. 2016) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  To establish liability, courts "look at whether there was a 'direct causal link' between the policy and the violation, or if the policy 'actually caused' the violation." *Burrell v. Hampshire County*, 307 F.3d 1, 10 (1st Cir. 2002) (quoting *Canton v. Harris*, 489 U.S. 378, 385, 391 (1989)).  Additionally, "[i]n limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  "[A] municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id.* (quoting *Canton*, 489 U.S. at 388).  In such instances, "[a] plaintiff typically must show a 'pattern

---

[8] The First Circuit "has not expressly held that private entities should be treated analogously to municipalities for the purpose of § 1983 liability." *Leavitt v. Corr. Med. Servs.*, 645 F.3d 484, 504 n.30 (1st Cir. 2011).

of similar constitutional violations by untrained employees . . . to demonstrate deliberate indifference for purposes of failure to train.'" *Gray v. Cummings*, 917 F.3d 1, 14 (1st Cir. 2019) (quoting *Connick*, 563 U.S. at 62).

Plaintiff has not alleged a custom or policy of Correct Care that was the "moving force," *Saldivar*, 818 F.3d at 20, behind his alleged constitutional violation.  As such, Plaintiff is unable to show a "'direct causal link' between the policy and the violation." *Burrell*, 307 F.3d at 10 (quoting *Canton*, 489 U.S. at 385).  Further, Plaintiff has not alleged how Correct Care's "failure to train its employees . . . amount[ed] to 'deliberate indifference.'"  *Connick*, 563 U.S. at 61 (quoting *Canton*, 489 U.S. at 388)).  Finally, because Plaintiff has not alleged facts to support a § 1983 claim against Correct Care's employee, there is no causal link between the alleged failure to train and a constitutional deprivation. In short, Plaintiff has failed to plead facts to support a plausible claim for relief pursuant to section 1983.[9]

---

[9]  Plaintiff also asserts a claim against Defendants pursuant to the Maine Civil Rights Act ("MCRA"), 5 M.R.S. § 4682.  (Complaint ¶¶ 96-98.)  "The MCRA is patterned after § 1983 and 'provides a private cause of action for violations of constitutional rights by any person.'"  *Doe v. Williams*, 2013 ME 24, ¶ 72, 61 A.3d 718 (citation omitted) (quoting *Jenness v. Nickerson*, 637 A.2d 1152, 1158 (Me. 1994)).  Accordingly, "[c]laims brought under the [MCRA] are interpreted in the same manner as claims brought under 42 U.S.C. § 1983. . . ."  *K v. City of S. Portland*, 407 F. Supp. 2d 290, 298 (D. Me. 2006); *see Gladu v. Correct Care Solutions*, No. 2:15-cv-00384-JAW, 2017 U.S. Dist. LEXIS 207364, at *n.6 (D. Me. Dec. 18, 2017.) ("Plaintiff's federal claim under § 1983 and his state claim under the Maine Civil Rights Act are subject to the same merits-based analysis.").  Therefore, because "[t]he disposition of a 42 U.S.C. § 1983 claim also controls a claim under the MCRA," *Berube v. Conley*, 506 F.3d 79, 85 (1st Cir. 2007), and because the Court recommends a dismissal of Plaintiff's claims arising under section 1983, the Court also dismisses Plaintiff's claims brought pursuant to the MCRA.  *See Johnson v. City of Biddeford*, 454 F. Supp. 3d 75, 92 (D. Me. 2020) ("[B]ecause the Maine Civil Rights Act claim arises from the same alleged violations that form the basis for the § 1983 claims, a separate analysis is not required. . . .")

### III.   CONCLUSION

Based on the foregoing analysis, I recommend the Court grant Defendants' motion for summary judgment.  In the event the Court does not grant summary judgment or to the extent summary judgment does not resolve all Plaintiff's asserted claims, I recommend the Court grant Defendants' motion to dismiss.[10]

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum and shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 14th day of January, 2021.

---

[10] Alternatively, if the Court agrees that Plaintiff cannot proceed on his federal claims due to his failure to exhaust the available administrative remedies, the Court could grant summary judgment on the federal claims, forego the assessment of Plaintiff's substantive claims, decline to exercise supplemental jurisdiction over the state law claims, dismiss Plaintiff's state law claims without prejudice, and moot Defendants' motion to dismiss. *See Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1177 (1st Cir. 1995) ("As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims").